FILED
1/4/21 10:12 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Bankruptcy No. 19-23484-JAD** |
| PAMELA C. PARKER, | ) | |
| | ) | **Chapter 13** |
| Debtor. | ) | |
| ──────────────────────── | X | **Related to ECF No. 74** |
| | ) | |
| LAUREL VALLEY | ) | |
| DEVELOPMENT, LLC, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| - v - | ) | |
| | ) | |
| PAMELA C. PARKER, and | ) | |
| RONDA J. WINNECOUR, | ) | |
| Chapter 13 Trustee, | ) | |
| | ) | |
| Respondent. | ) | |
| ──────────────────────── | X | |

### MEMORANDUM OPINION

The matter before the Court is a Motion for Relief From Stay filed by Laurel Valley Development, LLC ("Laurel"). The Motion for Relief From Stay is a core proceeding over which this Court has the requisite subject-matter jurisdiction to enter final judgment. See 28 U.S.C. §§ 157(b)(1), 157(b)(2)(A), 157(b)(2)(G), 157(b)(2)(O), and 1334(b). For the reasons which are set forth below, the Court shall enter an order granting the relief requested by the Motion for Relief From Stay.

00031054

## I.

The gist of the motion is that Laurel purchased real property located at 214 Ridgefield Drive, Greensburg, PA 15601 at a judicial sale on October 7, 2019, and Ms. Pamela C. Parker (the "Debtor") avers that the sale was ineffective because the property was arguably subject to a retroactive application of the automatic stay of 11 U.S.C. § 362(a) when it was sold.  See In re Ward, 837 F.2d 124, 126 (3rd Cir.1988) (sheriff's sale conducted in violation of the stay is "void and without effect", citing Kalb v. Feuerstein, 308 U.S. 433, 438–40, 60 S.Ct. 343, 346, 84 L.Ed. 370 (1940)); Maritime Elec. Co., Inc. v. United Jersey Bank (In re Maritime Elec. Co.), 959 F.2d 1194, 1206 (3rd Cir. 1992)(actions in violation of the automatic stay are void ab initio, citing Kalb , supra. and Ward, supra.); but see In re Siciliano, 13 F.3d 748 (3rd Cir. 1994)(holding that use of the word "anulling" in 11 U.S.C. § 362(d) indicates a legislative intent to apply certain types of relief retrospectively and validate proceedings that would otherwise be void ab initio).

The facts of this case are uncontested and this matter has been presented to the Court by way of a Joint Stipulation of Facts, see ECF No. 86, and by the Court taking judicial notice of the Court's docket and the admissions on file. Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.), 848 F.2d 414, 416 n. 3 (3rd Cir.1988)(the historical record was sufficiently well developed to allow the bankruptcy court to draw the conclusions and inferences necessary to decide the contested matter); Nantucket Investors II v.

California Fed. Bank (In re Indian Palms Assoc. Ltd.), 61 F.3d 197, 205 (3rd Cir.
1995)(in a contested matter the bankruptcy court may take judicial notice of
documents in the court's file confirming facts not in genuine dispute; or may take
judicial notice to confirm that a specific document was filed, that a party took a
certain position, that certain judicial findings were made or that a party made
certain admissions).

The docket and stipulated facts reflect that the Debtor filed a voluntary
petition for relief under chapter 13 of the Bankruptcy Code on September 2, 2019.
At the time she filed her bankruptcy case, the Debtor did not file all of the
documents that she was required to file under applicable law, including: 11 U.S.C.
§§ 521 and 1321 (setting forth duties of a debtor, including the duty to file a
chapter 13 plan and associated paperwork), and Rules 1007 and 3015(b) of the
Federal Rules of Bankruptcy Procedure (setting forth time periods for a debtor to
comply with section 521 of the Bankruptcy Code).

Local Bankruptcy Rule 1017-2, which augments Federal Rule of
Bankruptcy Procedure 1017 governing dismissal of cases, sets forth the
consequences for a debtor's failure to file all of the documents necessary to
prosecute a chapter 13 case in this District. See W.PA. LBR 1017-2.  Local
Bankruptcy Rule 1017-2 states as follows:

> (a)    The Clerk shall serve electronically upon debtor's
> counsel, or by postal mail if the debtor is not
> represented by counsel, a Notice of Deficient Filing
> if the debtor fails to file all of the documents

necessary to initiate the case as required by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, these Local Bankruptcy Rules, and/or any order of this Court.

(b)     Pursuant to the United States trustee's motion to dismiss, as authorized by General Order #91-1, the Notice of Deficient Filing will identify the filing deficiencies and set forth a date for dismissal of the case.

(c)     At any time before the date set for entry of an order of dismissal, the debtor:

(1)     may file a motion requesting a hearing at which debtor shall show cause why the case should not be dismissed for deficiencies; or

(2)     may file a motion and proposed order seeking an extension of time to comply with the Notice of Deficient Filing.

See W.PA. LBR 1017-2.

When the Debtor filed her bankruptcy case, it was a "bare bones filing" in that virtually all of the requisite documents were not filed with the petition on September 2, 2019. See ECF No. 1. The docket entry at the commencement of the Debtor's case even states as follows:

Chapter 13 Voluntary Petition . Fee Amount $0.00 Filed by Pamela C. Parker Government Proof of Claim due by 03/2/2020. Chapter 13 Plan due 09/16/2019. Declaration Re: Electronic Filing due 09/16/2019. Proofs of Claims due by 11/12/2019. Atty Disclosure Statement due 09/16/2019. Certificate of Credit Counseling due by 09/16/2019. Certificate of Exigent Circumstances due 09/16/2019. Declaration of Schedules due 09/16/2019. Employee Income Record or a statement that there is no record due by

> 09/16/2019.Chapter 13 Statement of Your Current
> Monthly Income and Calculation of Commitment Period
> Form 122C-1 Due 09/16/2019 Schedules A-J due
> 09/16/2019. Statement of Financial Affairs due
> 09/16/2019. Summary of schedules due 09/16/2019.
> Informational Notice Required by 342b due by
> 09/16/2019. Means Test Calculation Form 122C-2 Due:
> 09/16/2019. Incomplete Filings due by 09/16/2019.
> (Geisler, Michael) (Entered: 09/02/2019)

See ECF No. 1.

As required by Local Bankruptcy Rule 1017-2(a), the Clerk's Office transmitted to counsel for the Debtor an electronic notice of deficiency dated September 3, 2019 which stated as follows:

> Pursuant to Local Rule 1017-2, the United States
> Trustee is deemed to have filed a Motion To Dismiss this
> case, and that Motion will be deemed GRANTED, if any
> deadline set forth in the first docket entry is not met.

See ECF No. 6.

Parenthetically, the Court notes that these requirements and this process are of no surprise to the Debtor and her counsel, since the Debtor filed three prior bankruptcy cases in this District. See Bankruptcy No. 10-20016-JKF, Bankruptcy No. 13-22818-JAD, and Bankruptcy No. 18-20005-JAD.  All of these previous cases were commenced as "bare bones filings," and each of them were ultimately dismissed due to chapter 13 plan payment defaults.

With respect to the case *sub judice*, the Debtor was required to complete her deficient filings by September 16, 2019 or face dismissal of her bankruptcy case. The record reflects that the Debtor was unable to remedy the deficient filings by

00031054                              -5-

September 16, 2019, and was granted an additional 10 days (i.e., until September

26, 2019) to file the requisite documents. <u>See</u> ECF No. 13.

On September 26, 2019, the Debtor partially remedied her delinquent

documents.  That is, despite having been afforded an additional 10 days to

complete her filings, she still had not filed her chapter 13 repayment plan and

declaration of electronic filing.  Moreover, no further motion was filed on behalf of

the Debtor requesting more time to cure these deficiencies and no explanation has

been provided to date stating why the documents were not timely filed in the first

instance.

The record also reflects that when Debtor's counsel electronically filed the

less than complete set of documents on behalf of the Debtor on September 26,

2019, counsel selected the wrong descriptive entry to be placed on the docket.

That is, counsel's electronic docket entry improperly stated "Petition Completed,"

which was flagged by a corrective entry issued by the Clerk's Office on September

30, 2019 at 9:44 a.m. stating: "CORRECTIVE ENTRY: THE CHAPTER 13 PLAN

AND DECLARATION RE: ELECTRONIC FILING WERE DUE 9/26/2019." <u>See</u> ECF

No. 21.  The corrective entry was automatically transmitted to counsel for the

Debtor, <u>see</u> <u>id</u>., and the bankruptcy case was dismissed without prejudice on

October 1, 2019. <u>See</u> ECF No. 22; <u>see also</u> 11 U.S.C. § 1307(c)(authorizes the

court to dismiss a chapter 13 case when there is "unreasonable delay that is

prejudicial to creditors," or for "failure to file a plan timely," or for "failure to

commence making timely payments").[1]

On October 2, 2019, Debtor's counsel filed the declaration of electronic filing, see ECF No. 25, but filed neither a chapter 13 plan nor a motion seeking to reinstate the case. Nor did the Debtor, through legal counsel, file a motion to stay the effectiveness of the order for dismissal.

Section 362(c)(2) provides that:

> [The Automatic stay] continues until ***the earliest of*** –
>
> > (A)    the time the case is closed;
> >
> > (B)    the time ***the case is dismissed***; or
> >
> > (C)    . . . the time a discharge is granted or denied [in an individual case under chapters 7, or in any case by any debtor under chapters 9, 11, 12 or 13.]

See 11 U.S.C. § 362(c)(2)(emphasis added); see also In re Taylor, 81 F.3d 20, 23 (3rd Cir. 1996)(stay is in effect until the case is closed, dismissed or the debtor receives a discharge) and Montelione v. Fed. Nat'l Mortg. Assoc., 183 F. App'x 200, 201 (3rd Cir. 2006)(quoting Barbieri v. RAJ Acquisition Corp. (In re Barbieri), 199 F.3d 616, 621 (2nd Cir. 1999) and noting that "dismissal results in the debtor forfeiting protections afforded by the automatic stay")(non-precedential opinion).

After section 362(c)(2)(B)'s statutory dissolution of the stay on October 1,

---

[1] In light of the dismissal of the bankruptcy case, all of the pending motions filed by the Debtor were also denied without prejudice. The motions included an application to pay fees in installments and an application to extend the automatic stay pursuant to the serial bankruptcy filer limitations set forth in 11 U.S.C. § 362(c)(3).

2019, the Court of Common Pleas of Westmoreland County  conducted a judicial sale of the Debtor's real property on October 7, 2019.  At the judicial sale, Laurel was the successful purchaser.

A little more than a week after the judicial sale, on October 15, 2019, the Debtor then filed her Motion to Reconsider Dismissal.  Laurel was not served with a copy of the Motion to Reconsider Dismissal. and the Court was not apprised in the motion that the Debtor's real estate had been sold at a judicial sale before the Court of Common Pleas of Westmoreland County.

With there being no objection to the Motion to Reconsider Dismissal, the Court summarily granted the motion after the response period expired on November 5, 2019. See ECF No. 36.  The net effect of reconsideration of the order of dismissal was that the Court afforded the Debtor with another opportunity to continue with her chapter 13 case. See ECF No. 36.[2]  The Debtor ultimately filed her chapter 13 repayment plan on November 8, 2019, which required her to make monthly plan payments of $700 to the Chapter 13 Trustee. See ECF No. 40.  As

---

[2]  On October 15, 2019, the Debtor also filed a Motion to Reconsider Order Denying Motion to Extend Stay (pursuant to 11 U.S.C. § 362(c)(3)). See ECF No. 32.  Like the Motion to Reconsider Dismissal, the Motion to Reconsider Order Denying Motion to Extend Stay was  not served upon Laurel, and was summarily granted by the Court on November 5, 2019 when the response period expired with no objections having been filed. See ECF No. 37.  The net effect of this order found at ECF No. 37 is to extend the automatic stay (as permitted by 11 U.S.C. § 362(c)(3)) with respect to"all named Respondents."  Because Laurel was not among "all named Respondents" and received no service of process with respect to this motion, the order docketed at ECF No. 37 does not serve as a bar to the relief presently being requested by Laurel. See Metal Foundations Acquisition, LLC et al. v. Reinert et al. (In re Reinert), 467 B.R. 830, 831-32 (Bankr. W.D. Pa. 2012)(where third-party was not identified as a "respondent" to motion, and where motion did not specifically plead affirmative relief to the unnamed "respondent," order granting the motion was of no effect to the interests of the unnamed "respondent").

00031054                                    -8-

of November 30, 2020, the Debtor had paid only a total of $1,400 to the Chapter 13 Trustee, despite the case having been pending since September of 2019. <u>See</u> 11 U.S.C. § 1326(a)(1)(requiring debtors in chapter 13 to "commence making payments not later than 30 days after the date of filing of the plan or the order for relief, whichever is earlier"); <u>see</u> 11 U.S.C. § 1307(c)(cause to dismiss chapter 13 case includes unreasonable delay that is prejudicial to creditors, failure to commence making timely payments, and material default of a confirmed plan).

After the judicial sale, the Sheriff of Westmoreland County executed and delivered a sheriff's deed to Laurel on February 7, 2020.  Thereafter, Laurel obtained a judgment for ejectment in of July of 2020.  Laurel was prepared to enforce the judgment to eject the Debtor from the real property by way of a writ of possession.  However, since the bankruptcy case was reinstated by the Court's order of November 5, 2019, the Sheriff of Westmoreland County was advised of the reinstatement of the bankruptcy case and did not proceed with ejectment.  As a result, Laurel filed the instant Motion for Relief From Stay contending that the judicial sale did not violate the stay.  Laurel has also requested in its motion that if any stay is in effect that the reinstated stay be annulled so that Laurel may eject the Debtor from the property.  The Debtor, however, avers that the Motion for Relief From Stay should be denied and contends that *vacatur* of the dismissal order reinstates the automatic stay *nunc pro tunc* such that the judicial sale to Laurel is *void ab initio.*

**III.**

Absent some sort of *nunc pro tunc* relief in this case, the Debtor and Laurel do not dispute that the judicial sale divests the Debtor of her equitable interests in the subject property. Applicable authority under Pennsylvania law in the sheriff's sale context supports this conclusion.

Courts have held under Pennsylvania law that the purchaser of real property at a sheriff's sale acquires a vested equitable interest in the property "at the fall of the auctioneer's hammer." Chase Manhattan Bank v. Pulcini (In re Pulcini), 261 B.R. 836, 840 (Bankr. W.D. Pa. 2001)(quoting Butler v. Lomas & Nettleton Co., 862 F.2d 1015, 1019 (3rd Cir. 1988)); JP Morgan Chase Bank v. Rocco et al. (In re Rocco), 319 B.R. 411, 414 (Bankr. W.D. Pa. 2005); see also Pa. Co. for Insurances on Lives & Granting Annuities v. Broad Street Hospital, 354 Pa. 123, 128, 47 A.2d 281, 283 (Pa. 1946).

The sheriff's deed involving the Debtor's real property appears to have been recorded on February 7, 2020. The timing of the execution and delivery of the deed in this case is of no moment to the outcome of this case because the Third Circuit Court of Appeals observed that "the effective date of the [sheriff's] deed is [the] the date of the [s]heriff's sale." Butler, 862 F.2d at 1019 n. 6 (citing Pa. Co. for Insurances, supra.); accord Rocco, 319 B.R. at 414 and Davis v. SunTrust Mortg., Inc. (In re Davis), 281 B.R. 626, 633 (Bankr. W.D. Pa. 2002). Thus, it appears that the Debtor merely has a possessory interest under best case scenario

absent the Debtor being accorded *nunc pro tunc* relief.

The case-law addressing mere possessory interests in bankruptcy in the pre-bankruptcy sheriff sale or pre-bankruptcy judicial sale context is quite developed.  One court summarized it as follows:

> Although the debtor currently is in possession of the . . . the realty, possession by a debtor alone, without any right of ownership or contractual right to possession, is not protected to any great degree by the bankruptcy stay.  Relief from the stay is typically granted to the owner, or a secured creditor of the owner, when the debtor has no right to possession. See In re Moore & White Co., Inc., 83 B.R. 277, 281 (Bankr.E.D.Pa.1988).  Embedded in the concept of "cause" for relief from the bankruptcy stay is the issue of whether there is some legitimate purpose to be served in bankruptcy by keeping the debtor in possession. See generally First National Fidelity Corp. v. Perry, 945 F.2d 61 (3d Cir.1991) (mortgagee properly granted relief from stay when chapter 13 filing occurred after foreclosure judgment because, under bankruptcy law in effect at that time, the debtor/homeowner was unable to use chapter 13 to cure the mortgage default); In re Halley, 70 B.R. 283 (E.D.Pa.1987) (when mortgage loan matured prepetition, chapter 13 plan may not cure loan default and thus relief from the stay should be granted).

> If bankruptcy serves no legitimate purpose in retaining the debtor's possession, then the property owner should be granted relief from the stay to exercise its non-bankruptcy law rights to recover possession from the debtor. See, e.g. In re Moore, 267 B.R. 111, 117–18 (Bankr.E.D.Pa.2001). Thus, if a foreclosure sale takes place prepetition, a chapter 13 debtor has no right to cure or reinstate her mortgage under Pennsylvania law. See In re Brown, 75 B.R. 1009 (Bankr.E.D.Pa.1987); In re Rouse, 48 B.R. 236 (Bankr.E.D.Pa.1985). Nor, after such a sale, does she have any right to cure a prepetition mortgage default in a chapter 13 proceeding under

federal bankruptcy law. 11 U.S.C. § 1322(c)(1). In such circumstances, *i.e.*, where a pre-bankruptcy sale has already occurred, courts have routinely held that relief from the bankruptcy stay generally is appropriate so the buyer may eject the debtor. See, e.g., In re Moore, 267 B.R. at 117–18; In re Belmonte, 240 B.R. 843, 854 (Bankr.E.D.Pa.1999) (when debtor's ownership interests in realty were terminated prepetition and the chapter 13 case cannot restore those rights, cause exists to terminate the bankruptcy stay), rev'd in part, 279 B.R. 812 (E.D.Pa.2001); In re Yorke, 1996 WL 509614, at *2 (Bankr.E.D.Pa.1996) ("Since the Debtor lacks title to her Home ... she cannot propose a viable plan to cure arrears on, or liquidate, that mortgage. Since she cannot confirm a plan achieving these ends, the Bank is entitled to relief, pursuant to 11 U.S.C. § 362(d)(1), on its Stay Motion"); In re Brown, 75 B.R. at 1009 (stay lifted when bankruptcy filed after foreclosure sale).

In re Dunlop, 378 B.R. 85, 92 (Bankr. E.D. Pa. 2007).

Accordingly, to the extent the judicial sale in this case was not subject to the automatic stay in the first instance, "cause" exists as a matter of fact and law to grant Laurel an annulment from the later imposition of the automatic stay (i.e., when it was reimposed as of the date the dismissal order was vacated) to complete ejectment. See Pulcini, 261 B.R. at 841-42.

For purpose of completeness, the Court notes that its conclusion is appropriate in light of the fact that the Debtor is a repeat bankruptcy filer who also failed to protect her alleged interest in the real property by not extending the automatic stay pursuant to 11 U.S.C. § 362(c)(3) as to Laurel (despite the Debtor having prior knowledge of the judicial sale of the property to Laurel). See footnote 2, supra.; see Joint Stipulation of Facts at paras.11 (letter sent from Laurel to the

Debtor prior to the filing of the motion to extend stay) and 15 (representative of Laurel visited property and introduced themselves to the Debtor prior to the hearing date scheduled on the motion to extend), ECF No. 86; compare Holcomb v. Hardeman (In re Holcomb), 380 B.R. 813 (B.A.P. 10th Cir. 2008)(failure extend the stay terminates the stay as to the debtor and debtor's property) with Reswick v. Reswick (In re Reswick), 446 B.R. 362 (B.A.P. 9th Cir. 2011)(failure to extend the stay terminates stay as to the debtor, debtor's property, and property of the estate).

As to the ultimate issue in this case, that is whether this Court's reinstatement of the Debtor's bankruptcy case operates to retroactively reinstate the automatic stay thereby voiding intervening creditor activity during the gap period, this Court previously addressed this issue in Gargani v. Wells Fargo Bank, N.A. (In re Gargani), 398 B.R. 839 (Bankr. W.D. Pa. 2009).

In Gargani, the debtor (like Ms. Parker) had his case dismissed for failure to file documents.  In light of dismissal, the mortgagee then proceeded with a sheriff's sale.  After the hammer fell, the debtor in Gargani remained in the property, and  filed a motion to re-establish the bankruptcy.  Since no creditor objected, the order of dismissal was vacated by default.  The foreclosing creditor then filed a motion for relief from stay to complete ejectment and the debtor filed a motion to stay ejectment contending that *vacatur* of the dismissal order retroactively reinstated the automatic stay.  During the course of rejecting the

debtor's arguments in <u>Gargani</u>, this Court wrote:

> In clear and unambiguous language, Congress has stated its intent for the automatic stay to terminate upon the dismissal of the case. See 11 U.S.C. § 362(c)(2)(B). Once the case is dismissed, creditors are free to exercise their rights in the debtor's assets. <u>Shaw v. Ehrlich</u>, 294 B.R. 260, 274 (W.D.Va.2003).
>
> Courts have held that "reinstating the case does not retroactively reinstate the automatic stay during the period of time the case was dismissed with respect to creditor conduct that occurred between the dismissal and reinstatement." <u>In re Searcy</u>, 313 B.R. 439, 443 (Bankr.W.D.Ark.2004)(citing <u>In re Hill</u>, 305 B.R. 100, 104–06 (Bankr.M.D.Fla.2003)). According to these courts, "[a]lthough the bankruptcy code permits the court to retroactively grant relief from stay by annulling the stay, there is no authority that permits the court to retroactively impose the stay." <u>Id</u>.
>
> In essence, these courts have held that if a debtor wants to obtain the protection of the automatic stay, it is incumbent upon the debtor to be pro-active and petition the court for *vacatur* of the dismissal order *prior* to the date set for the Sheriff's Sale.
>
> In this case, the debtor's motion to reinstate the bankruptcy case was filed after the Sheriff's Sale. As a result, the July 7, 2008 Sheriff's Sale is not avoidable pursuant to 11 U.S.C. § 362(a).

<u>In re Gargani</u>, 398 B.R. at 840-41.

Upon taking a renewed look at this Court's prior opinion in <u>Gargani</u>, the Court sees no reason to disturb its holding.  In fact, the Court's conclusion in <u>Gargani</u> is consistent with the opinions of other courts that have addressed the issue.  See <u>e.g.</u>, <u>Lashley v. First Nat'l Bank of Live Oak (In re Lashley)</u>,  825 F2d.

362, 364 (11ᵗʰ Cir. 1987) <u>cert. denied</u>, 484 U.S. 1075 (1988)(bankruptcy court lacks the power to retroactively impose a stay); <u>Singleton v. Countrywide Home Loans, Inc. (In re Singleton)</u>, 358 B.R. 253, 261 (D.S.C. 2006) (holding that the Bankruptcy Court had no authority to retroactively reimpose the automatic stay); <u>Sewell v. MGF Funding, Inc. (In re Sewell)</u>, 345 B.R. 174, 179-81 (B.A.P. 9ᵗʰ Cir. 2006) (holding that the Bankruptcy Court did not have discretion to retroactively impose the automatic stay, its only option was to impose the automatic stay effective upon signing the order and entry on the docket); <u>Lomagno v. Salomon Bros. Realty Corp. (In re Lomagno)</u>, 320 B.R. 473, 478-80 (B.A.P. 1ˢᵗ Cir. 2005), <u>aff'd</u> 429 F.3d 16 (1ˢᵗ Cir. 2005)(reversal of order of dismissal does not retroactively impose the automatic stay); <u>Nicholson v. Nagel (In re Nagel)</u>, 245 B.R. 657, 661-62 (D. Ariz. 1999) (reversing Bankruptcy Court and holding that a bankruptcy court does not have statutory authority to retroactively reimpose the automatic stay after dismissal of a chapter 11 bankruptcy case); <u>In re Hill</u>, 305 B.R. 100, 105-11 (Bankr. M.D. Fla. 2003)(automatic stay terminates upon dismissal of case and is not reinstated retroactively upon *vacatur* of the order for dismissal); <u>Frank v. Gulf States Finance Co. (In re Frank)</u>, 254 B.R. 368, 374 (Bankr. S.D. Tex. 2000)(automatic stay terminated upon dismissal, and repossession of vehicle did not violate the automatic stay because reinstatement of the case occurred after date of repossession); <u>Holloway v. Valley Auto Sales (In re Holloway)</u>, 565 B.R. 435, 438-39  (Bankr. M.D. Ala. 2017)(*vacatur* of order of dismissal does not

retroactively reinstate automatic stay), and In re Rivera, 280 B.R. 699, 701 (Bankr. S.D. Ala. 2001)(no authority to retroactively reinstate the automatic stay for the time period between date of original dismissal and reinstatement of the case).

Because there is overwhelming support for the proposition that the *vacatur* of an order of dismissal of a chapter 13 case does not retroactively impose the automatic stay, this Court concludes that the judicial sale to Laurel is not voidable because it did not violate the automatic stay. In addition, as set forth above, appropriate "cause" exists to annul the stay later imposed by the reinstatement of the case without notice to Laurel to (a) permit the execution and delivery of the sheriff's deed in favor of Laurel to remain unaffected, and (b) to permit the Sheriff of Westmoreland County to enforce the writ of possession in favor of Laurel. See, Pulcini, supra.[3]

### III.

In rendering its decision, the Court has duly considered the Debtor's argument that the order of dismissal was allegedly "not final" because the Debtor had moved for reconsideration within 14 days of the order's entry. Succinctly stated, the Debtor argues that because she filed her Motion to Reconsider

---

[3]  The Court notes that the Debtor's chapter 13 plan provides for no "rent" payments to Laurel. Even if it did, the Debtor has significantly defaulted in her obligations to fund the proposed plan. Moreover, the Court is not aware of any legal authority by which the Court could compel Laurel to become an involuntary landlord to the Debtor. Cf., Pulcini, 261 B.R. at 841-42. (automatic stay lifted as to debtor/mortgagor in possession of foreclosed real property) and Eden Place, LLC v. Perl (In re Perl), 811 F.3d 1120, 1127-1130 (9th Cir. 2016)(same).

Dismissal within 14 days of the entry of the dismissal order, the dismissal order was not "final" unless and until the Motion to Reconsider Dismissal was adjudicated. In essence, the Debtor argues that because reconsideration was granted, Rule 9023 of the Federal Rules of Bankruptcy Procedure (which incorporates Rule 59 of the Federal Rules of Civil Procedure into bankruptcy matters) operates as a *de facto* stay of the prior order dismissing the Debtor's bankruptcy case. The Court finds the Debtor's argument unpersuasive for several reasons.

First, Rule 9023 of the Federal Rules of Bankruptcy Procedure and Rule 59 of the Federal Rules of Civil Procedure contain no provision providing for a retroactive stay of any pre-existing order of the Court. Reading by way of inference a stay into these rules is something that the Court is not inclined to do as such unilateral action by the Court would abrogate the rule making process for the federal courts. Moreover, the drafters of the rules have made it known when a stay is automatically imposed by operation of the rules, and none of these rules apply to instances where a bankruptcy case is dismissed. See e.g., Fed.R.Bankr.P. 4001(a)(3)(when a motion for relief from stay is granted, the order is stayed unless the court orders otherwise);[4] and Fed.R.Bankr.P. 6004(h)(automatic stay of order

---

[4] The Court notes that the stay of Bankruptcy Rule 4001(a)(3) only applies when an order "granting a motion for relief from an automatic stay" is entered. In the case of Ms. Parker, the stay dissolved as a matter of law when the bankruptcy case was dismissed, and not upon an order granting a motion for relief from the automatic stay. For this reason, Bankruptcy Rule 4001(a)(3) does not apply in this case.

authorizing use, sale, or lease of property).

Second, the case law that has developed in this area overwhelmingly rejects the Debtor's arguments.[5]  For example, in In re Hill, supra., the United States Bankruptcy Court for the Middle District of Florida wrote extensively about whether a motion for reconsideration filed within the applicable appeal period renders a dismissal order "non-final" for purposes of enforcement.

In Hill the court held that "neither Rule 9023, Rule 9024, nor Rule 8002 stays the effectiveness of the dismissal order." Hill, 305 B.R. at 109.  The Hill court also examined the stay of enforcement provisions of Rule 7062 of the Federal Rules of Bankruptcy Procedure, which incorporates Rule 62 of the Federal Rules of Civil Procedure, and determined that the stay provisions of that rule do not apply because they are limited solely to judgments entered in "adversary proceedings" under Part VII of the Bankruptcy Rules and not to "contested matters" under Rule 9014 of the Federal Rules of Bankruptcy Procedure. Id.;[6] see

---

[5] The only circumstance where courts have permitted the retroactive reinstatement of the automatic stay are cases where the dismissal of the bankruptcy case violated the due process rights of the debtor. See, e.g., In re Scarborough, 457 F. App'x 193,199 (3rd Cir. 2012) and Great Pac. Money Mkts., Inc. v. Krueger (In re Krueger), 88 B.R. 238, 241-42 (B.A.P. 9th Cir. 1988).  Because the Debtor has not contended that the dismissal of this bankruptcy case violated due process, this Court offers no opinion, either positively or negatively, as to whether the due process exception is viable or cognizable under Third Circuit law. Cf. Lomagno, 429 F.3d at 18 (noting that the 11th Circuit Court of Appeals has not recognized the due process exception to the prohibition of retroactive application of the automatic stay, but declined to decide the issue).

[6] Dismissal of a bankruptcy case is not an adversary proceeding under Part VII of the Federal Rules of Bankruptcy Procedure.  Rather, dismissal of a bankruptcy case is governed by Rule 1017 of the Federal Rules of Bankruptcy Procedure, which in-turn provides that dismissal is a contested matter. See Fed.R.Bankr.P. 1017(f)(1) and Fed.R.Bankr.P. 9014; see also In re LLC 1 07CH12487, 608 B.R. 830,

(continued...)

also Fish Market Nominee Corp. v. Pelofsky, 72 F.3d 4, 6-7 (1st Cir. 1995); In re Lugo v. De Jesus Saez (In re De Jesus Saez), 721 F.2d 848, 851-52 (1st Cir.1983); In re Franklin Mortgage & Investment Co., 144 B.R. 194, 194–195 (Bankr.D.C.1992); In re Barnes, 119 B.R. 552, 555 (S.D.Ohio 1989); In re Weston, 101 B.R. 202, 204–206 (Bankr.E.D.Cal.1989), aff'd. without published opinion 123 B.R. 466 (B.A.P. 9th Cir.1991), aff'd. without published opinion 967 F.2d 596 (9th Cir.1992); Bluford et al. v. First Fidelity Mortg. Co. (In re Bluford), 40 B.R. 640, 644 (Bankr.W.D.Mo.1984).[7]

Third, having no stay retroactively imposed during the "gap" period between dismissal and later reinstatement is consistent with the plain language of section 362(c)(2) of the Bankruptcy Code, which plainly and unequivocally states that the automatic stay continues as a matter of law until "the earliest" of the time the case is closed, the time the case is dismissed, or the time a discharge is granted or denied. 11 U.S.C. § 362(c)(2). As this statute reflects, Congress has not afforded the Court with discretion to unilaterally extend automatic stay protection beyond

---

[6](...continued)
844 (Bankr. N.D. Ill. 2019).

[7] In its brief, the Debtor cites the case of France v. Lewis & Coulter, Inc. (In re Lewis & Coulter, Inc.), 159 B.R. 188, 191 (Bankr.W.D.Pa.1993) for the proposition that the subsequent vacatur of the dismissal order renders the dismissal order a "nullity." The Court, however, finds Lewis & Coulter to be distinguishable because nowhere in the opinion did the court address the retroactive application of the automatic stay between the time a bankruptcy case is originally dismissed and the time it is later reinstated. Given this distinguishing point, the Court finds the analysis set forth in G.E. Capital Mortgage Services v. Thomas (In re Thomas), 194 B.R. 641, 648 n. 19 (Bankr.D.Ariz.1995) to be more persuasive.

00031054                                    -19-

the occurrence of the first of these three events.   Because the United States Supreme Court has instructed, "[w]hen the words of a statute are unambiguous, then, this first canon [of statutory construction] is also the last: judicial inquiry is complete," Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992), this Court is powerless to re-write the statute.[8]

Fourth, having a dismissal order being effective upon its entry is consistent with the operation of section 349(b) of the Bankruptcy Code (which provides for revesting of property and other unwinding of bankruptcy events when a bankruptcy case is dismissed). See 11 U.S.C. § 349(b).[9]  The legislative history of § 349 shows that Congress intended that this provision "undo the bankruptcy

---

[8]   The Court also notes that while the Bankruptcy Code permits the court to retroactively grant relief from the stay by annulling the stay, see In re Siciliano, 13 F.3d at 750-51 and 11 U.S.C. §362 (d), there is not a single provision in the Bankruptcy Code which retroactively imposes the automatic stay. In re Searcy, 313 B.R. at 443.

[9]   Section 349(b) of the Bankruptcy Code states:

> (b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—
>     (1) reinstates—
>         (A) any proceeding or custodianship superseded under section 543 of this title;
>         (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and
>         (C) any lien voided under section 506(d) of this title;
>     (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and
>     (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349(b).

case, as far as practicable, and restore all property rights to the position in which they were found at the commencement of the case." See H.R. Rep. No. 95-595, at 338 (1977); S. Rep. No. 95-989, at 48-49 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5835, 6294. "Termination of the automatic stay at the moment a dismissal order is entered is the quickest and most effective means of restoring debtors and creditors to their status quo positions prior to the case in bankruptcy." Shaw, 294 B.R. at 274-75.   Not to be lost in this analysis is that construing an order of dismissal as somehow floating into an unknown abyss or otherwise not meaning what it says can have "potentially enormous, highly disruptive, and unintended consequences." Aheong v. Mellon Mortg. Co. (In re Aheong), 276 B.R. 233, 243 n. 10 (B.A.P. 9th Cir. 2002).  As the Bankruptcy Appellate Panel in Aheong observed:

> Unlike an order reopening a bankruptcy case, which "does not undo any of the statutory consequences of closing" [Menk v. LaPaglia (In re Menk), 241 B.R. 896, 913 (B.A.P. 9th Cir. 1999)], setting aside an order dismissing a bankruptcy case would have potentially enormous, highly disruptive, and unintended consequences. Upon dismissal, "avoided transfers are reinstated, certain voided liens revive, . . . all property of the estate revests in the entity in which such property was vested immediately before bankruptcy . . ." and "the automatic stay against interests other than property of the estate terminates." Menk, 241 B.R. at 912. See 11 U.S.C. §§ 349 and 362(c)(2)(B). Would setting aside a dismissal order re-void the previously avoided then reinstated transfers and liens, revest property in the estate, and reimpose the automatic stay as if there had been no dismissal? Would creditors who took actions between the time the dismissal order issued and when it was set aside have to move to annul the automatic stay to validate those actions? What about third parties, such

> as bona fide purchasers for value during that time? How
> could these problems be avoided without setting aside
> the dismissal for some purposes but not others, creating
> another jurisdictional swamp?

Id. Thus enforcing a dismissal order as effectively dissolving the automatic stay

upon its entry without question or exception avoids all of the chaos enumerated

in the Aheong decision and appropriately follows the plain language of 11 U.S.C.

§§ 349(b) and 362(c)(2)(B).

Fifth, reinstating the automatic stay only prospectively (and not

retrospectively) is consistent with the Court's order granting the Motion to

Reconsider Dismissal. This conclusion is particularly acute given the fact that

nowhere in the Motion to Reconsider Dismissal did the Debtor ever request a *nunc*

*pro tunc* reinstatement of the automatic stay; nor did the Debtor ever put creditors

or other parties-in-interest on notice that the Debtor was seeking to adversely

affect their rights. See ECF No. 30. Moreover, when the Court entered the order

vacating dismissal, the Court did not intend that its order be a *nunc pro tunc*

reinstatement of the automatic stay because the order itself only states that "the

Court's order dismissing this case is hereby reconsidered and vacated." See ECF

No. 36.

Under similar circumstances, courts have rejected a retroactive

reinstatement of the automatic stay. For example, the United States District

Court for New Jersey held in United States v. Falcone:

> . . . I need not decide whether the bankruptcy judge here

> had the authority to retroactively impose the stay
> because, even assuming he did, there is no indication
> that he actually imposed the stay retroactively. The
> Consent Order to Vacate clearly invalidated the 1995
> dismissal, but made no mention of the automatic stay
> provision. This is not surprising, given . . . [t]here was no
> question before the court as to the status of the
> automatic stay from June 1995 through the date of the
> Consent Order to Vacate.

United States v. Falcone, Civil Action No. 09-2269(FLW), 2010 WL 1372435,  at

*11 (D.N.J. March 31, 2010); see also In re Searcy, 313 B.R. at 443 (it is "not the

purpose of a *nunc pro tunc* order to alter the judgment actually rendered")(citing

Cairns v. Richardson, 457 F.2d 1145, 1149 (10th Cir. 1972).  The District Court

in Falcone further held:

> Courts will not "giv[e] to statutes a retrospective
> operation, whereby rights previously vested are
> injuriously affected, unless compelled to do so by
> language so clear and positive as to leave no room to
> doubt that such was the intention of the legislature."
> Landgraf v. United States, 511 U.S. 244, 271 (1994)
> (quoting Chew Heong v. United States, 112 U.S. 536,
> 559, 5 S.Ct. 255, 28 L.Ed. 770 (1884)) (emphasis added).
> This quote encapsulates the presumption against the
> retroactive application of statutes. See id. While not
> presented with the interpretation of a statute here, the
> same principle applies to interpreting the Consent Order
> to Vacate. Determining that the Consent Order to Vacate
> retroactively imposed the stay could affect the
> previously-vested rights of all the creditors in, and other
> parties related to, Falcone's bankruptcy. I will not open
> that juridical "can of worms" since there is no clear
> indication that the Consent Order to Vacate was drafted
> with that intention in mind.

Falcone, 2010 WL 1372435, at *12.

Sixth, application of the Debtor's theory to the case can lead to absurd results not contemplated by either the Bankruptcy Code or Bankruptcy Rules. Again, in its most basic form, the Debtor argues that so long as a dismissed debtor timely files a motion to alter or amend judgment under Bankruptcy Rules 9023 or 9024 (or a notice of appeal under Bankruptcy Rule 8002), the dismissed debtor has an extended benefit of the automatic stay during the post-dismissal period while the motion to alter or amend judgment (and/or an appeal) is being litigated.

This extension of the automatic stay is extraordinary, because nowhere is it provided for in the Bankruptcy Code.  Had Congress desired to inflate the duration of the automatic stay in a manner like the Debtor demands, certainly Congress could have added it to 11 U.S.C. § 362(c)(2).  But Congress did not craft such an extension into the statute.

Moreover, if the Court were to accept the Debtor's theory, it would eviscerate Bankruptcy Rule 8007 which governs stays pending appeals.  Applicable law interpreting Bankruptcy Rule 8007 requires, among other things, that the party seeking a stay must first demonstrate to the court that the movant has a likelihood of success on the merits. See In re Revel AC, Inc., 802 F.3d 558 (3rd Cir. 2015).  The Debtor's theory of the case, however, places no burden on an aggrieved debtor to prove the merits or *bona fides* of his or her challenge to an order of dismissal as a precondition to having the continued benefit of the stay.

Rather, the logical extension of the Debtor's argument is that an aggrieved debtor can have a totally meritless challenge to the court's order dismissing the bankruptcy case, litigate the appropriateness of the dismissal through a motion for reconsideration and  various levels of appellate review, and all the while have the constant protection of the automatic stay without adherence to the concomitant duties ordinarily placed on a debtor in bankruptcy.[10]  This result is not something contemplated by the Bankruptcy Code and/or the Bankruptcy Rules. Indeed, in such circumstances, the Third Circuit Court of Appeals has denied the former debtor's request that the automatic stay be extended or otherwise reinstated retroactively. See In re Scarborough, 457 F.App'x at 199 (automatic stay not extended post-dismissal while debtor litigated appeal).

Seventh, the Debtor's argument that the original dismissal order was of no moment ignores the general rule that unless some statute or rule provides otherwise, "orders and judgments must be complied with promptly." Maness v. Meyers, 419 U.S. 449, 458 (1975).  "If a person to whom a court directs an order believes that the order is incorrect the remedy is to appeal [or move for relief from the judgment or order], but absent a stay, he must comply promptly with the order pending appeal [or motion asking for relief from the judgment or order]." Id.

---

[10]  For example, in the chapter 13 context, dismissal renders the former debtor no longer obligated to tender plan payments. See e.g. Wells Fargo Bank, N.A. v. Oparaji (In re Oparaji), 698 F.3d 231, 238 (5th Cir. 2012)(parties no longer bound by chapter 13 plan requirements when a chapter 13 case is dismissed).

**IV.**

The dismissal order entered by the Court was clearly effective when entered.

It was incumbent upon the Debtor to promptly obtain a stay or obtain a *vacatur*

of the order of dismissal <u>before</u> the judicial sale was conducted by the

Westmoreland County Court of Common Pleas.  Unfortunately for the Debtor, this

did not occur and the Court is powerless to reconstruct history.  As the United

States District Court for the District of Arizona wrote in <u>Nicholson v. Nagel (In re</u>

<u>Nagel)</u> when it reversed a bankruptcy court decision under facts similar to the

case at bar:

> A review of the case law provided by the parties and the court's own research reveals no basis in law for the proposition that the automatic stay continues after dismissal of a case. A retroactive reinstatement of the automatic stay is not consonant with this conclusion. Indeed, the bankruptcy court's retroactive reinstatement of the "automatic stay" is squarely at odds with the plain reading of subsection 362(c)(2) and Congress' intent that the parties be returned to the *status quo ante*. By "undoing" the return to the *status quo ante* through the retroactive application of the stay, the bankruptcy court engaged in a kind of judicial time travel that cannot be reconciled with the law. This was not a simple matter of a *nunc pro tunc* order accomplishing that which should have been done previously. Rather, the order [vacating dismissal] divested otherwise vested rights from parties previously properly restored to the *status quo ante* pursuant to subsection 362(c)(2).

<u>Nagel</u>, 245 B.R. at 662.

A relatively recent decision by the United States Supreme Court in <u>Roman</u>

<u>Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feleciano</u>, 140 S.Ct. 696

(2020) supports this Court's conclusions.

In <u>Acevedo</u>, the Supreme Court recognized that federal courts may issue *nunc pro tunc* orders to reflect the reality of what has already occurred. <u>Id.</u> at 701 (citing <u>Missouri v. Jenkins</u>, 495 U.S. 33, 49 (1990).[11] "Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court." <u>Acevedo</u>, 495 U.S. at 701. (quoting <u>Cuebas y Arredondo v. Cuebas y Arredondo</u>, 223 U.S. 376, 390 (1912).  Orders that are entered *nunc pro tunc*:

> . . . are not some Orwellian vehicle for revisionist history– creating facts that never occurred in fact. <u>United States v. Gillespie</u>, 666 F.Supp. 1137, 1139 (N.D. Ill. 1987).  Put plainly, the court cannot make the record what it is not. <u>Jenkins</u>, 495 U.S. at 49, 110 S.Ct. 1651.

<u>Acevedo</u>, 140 S.Ct. at 701 (quotation marks omitted).

The record in the instant case reflects that at no time was the Court ever asked to retroactively reinstate the automatic stay, nor does the order vacating the order of dismissal provide as much (whether as a matter of fact or as a matter of

---

[11]   <u>Acevedo</u> was a case that examined the jurisdictional power of the territorial court of Puerto Rico (i.e., the Puerto Rico Court of First Instance) to issue orders in a civil action during the period of time after the litigation was removed to the United States District Court for the District of Puerto Rico and before it was remanded back to the territorial court.  The Supreme Court's opinion examined whether the territorial court issuing an order during the gap period had an active case within its subject-matter jurisdiction thereby empowering it to enter such an order as of the order's effective date.  Correlative to the analysis was whether some statute or rule affords (or does not afford) the court with the jurisdiction to enter such an order.  The Supreme Court's opinion does not preclude *nunc pro tunc* orders on a *per se* basis.  Rather, the analysis as to whether the applicable court can issue a *nunc pro tunc* order is nuanced, and is dependent upon the facts and law concerning the particular relief being sought. <u>See</u> <u>e.g.</u>, <u>Merriman v. Fattorini (In re Merriman)</u>, 616 B.R. 381, 391-95 (B.A.P. 9th Cir. 2020)(bankruptcy court had requisite jurisdiction and statutory authority to retroactively "annul" the automatic stay based upon the plain language of 11 U.S.C. § 362(d), and <u>Acevedo</u> does not pertain to such statutory authority of the bankruptcy court).

law).  Under these circumstances, *nunc pro tunc* relief is not appropriate under

<u>Acevedo</u>, <u>supra</u>.

## V.

Because there is overwhelming support for the proposition that the *vacatur*

of an order of dismissal of a chapter 13 case does not retroactively impose the

automatic stay, the Court concludes that the judicial sale to Laurel is not voidable

because it did not violate the automatic stay.  In addition, as set forth above,

appropriate "cause" exists to annul the stay that was later imposed by the

subsequent reinstatement of the case without notice to Laurel to (a) permit the

execution and delivery of the sheriff's deed in favor of Laurel to remain in place

unaffected, and (b) to permit the Sheriff of Westmoreland County to enforce the

writ of possession in favor of Laurel.  Accordingly, the Court finds that Laurel's

Motion for Relief From Stay should be granted and the Court shall enter the

proposed order that is appended to Laurel's motion.

Date: January 4, 2021                                        pgc
_____
                                        The Honorable Jeffery A. Deller
                                        United States Bankruptcy Judge


cc:    Michael Geisler, Esquire, counsel to Ms. Pamela C. Parker
       Robert Slone, Esquire, counsel to Laurel Valley Development, LLC